# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TYRONE D. GLADDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18cv512 |
| | ) | |
| CAPTAIN SETTLES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge on "Defendant's Motion for Summary Judgment" (Docket Entry 14) (the "Summary Judgment Motion"). The parties have consented to disposition of this case by a United States Magistrate Judge. (Docket Entry 11-1.) For the reasons that follow, the Court will grant the Summary Judgment Motion.

## INTRODUCTION

Tyrone D. Gladden (the "Plaintiff"), a pretrial detainee proceeding pro se, commenced this action in forma pauperis pursuant to 42 U.S.C. § 1983 against "Captain Settles" (the "Defendant") in his individual and official capacities, alleging that Defendant violated his constitutional rights under the "8th and 14th Amendment[s]"* (Docket Entry 2 (the "Complaint") at 2-3.)

___

\* Citations to Docket Entry pages utilize the CM/ECF footer's pagination. Although the Complaint alleges a violation of his constitutional rights under the "8th Amendment" (Docket Entry 2 at 3), because of Plaintiff's status as a pretrial detainee, his

(continued...)

> According to the (unverified) Complaint:
>
> On May 18th, 2018, May 25th, 2018, [and] June 2nd, 2018 each after midnight, [Plaintiff] was given permission to use the law library in the multi[-]purpose room to read [and] write in full restraints (Handcuffs connected to a waist[]chain and leg irons). [Defendant] approved this situation because he has final authority. [Plaintiff has] not broken any rules, nor [has Plaintiff] caused any disruption towards anyone[. Plaintiff has] been placed in admin[istrative] segregation without due process.
>
> This is a violation towards [Plaintiff's] 8th [and] 14th amendment [rights]. [Defendant] acted pursuant to the custom of the Forsyth County De[ten]tion Center.
>
> . . . .

(Id. at 5.)

In response, Defendant filed his Answer, which asserted various immunity defenses. (Docket Entry 8 at 4-5.) Plaintiff then filed an "Answer to a Counterclaim" (Docket Entry 12), alleging that, in addition to being "forced to sit in full restraints while researching law books, [he is] not allowed access to the phone when out of his cell like the policy handbook suggest[s]" (id. at 2). Plaintiff argues that "his placement in segregation with related loss of privileges and in restraints while he conducted legal research w[as] not rationally related to a legitimate nonpunitive governmental purpose [and] as the Complaint indicates[, P]laintiff had done nothing to warrant imposing such

---

\*(...continued)
claims fall under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. See Kingsley v. Hendrickson,  U.S.  , 135 S. Ct. 2466, 2475 (2015).

2

treatment." (Id. at 4 (internal citations, parenthesis, and quotation marks in original omitted).)

Following a six-month period for discovery (see, e.g., Text Order dated Oct. 11, 2018), Defendant filed his Summary Judgment Motion (Docket Entry 14; see also Docket Entry 15 (Defendant's summary judgment brief); Docket Entry 15-1 (Affidavit of Sergeant Whitt); Docket Entry 15-2 (Affidavit of Officer Bartlett); Docket Entry 15-3 (Affidavit of Defendant); Docket Entry 15-4 (Affidavit of Sheriff Schatzman). The Clerk then notified Plaintiff of his "right to file a 20-page response in opposition . . . accompanied by affidavits setting out [his] version of any relevant disputed material facts or . . . any other responsive material." (Docket Entry 16 at 1; see also id. ("Your failure to respond or, if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that [Defendant's] contentions are undisputed and/or that you no longer wish to pursue the matter.").) Plaintiff thereafter filed an unsworn summary judgment response (Docket Entry 17) repeating in conclusory fashion (and without supporting evidence) that "his placement in segregation with related loss of privileges and [being placed] in restraints while he conducted legal research w[as] not rationally related to a legitimate nonpunitive governmental purpose" (id. at 3 (parenthesis and quotation marks in original omitted)).

3

**DISCUSSION**

"Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Welton v. Durham Cty., No. 1:17CV258, 2018 WL 4656242, at *2 (M.D.N.C. Sept. 27, 2018) (unpublished) (citing Fed. R. Civ. P. 56(a)). "The moving party has the initial burden of demonstrating the absence of any material issue of fact; [however,] once the moving party meets its initial burden, the non-moving party must come forward with <u>evidentiary material</u> demonstrating the existence of a genuine issue of material fact requiring a trial." Heggins v. City of High Point, No. 1:16CV977, 2017 WL 6514681, at *2 (M.D.N.C. Dec. 20, 2017) (unpublished) (emphasis added); see also Equal Employ. Opportunity Comm'n v. Womble Carlyle Sandridge & Rice, LLP, No. 1:13CV46, 2014 WL 2916851, at *4 (M.D.N.C. June 26, 2014) (unpublished) ("On those issues for which the non-moving party has the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence . . . ."), aff'd, 616 F. App'x 588 (4th Cir. 2015).

In assessing such matters, "the Court [does] not consider[ ] 'facts' set forth in [summary judgment] briefs that are not supported by citations to admissible evidence." Maisha v. University of N.C., No. 1:12CV371, 2015 WL 277747, at *1 (M.D.N.C. Jan. 22, 2015) (unpublished), aff'd, 641 F. App'x 246 (4th Cir.

4

2016). Additionally, "[u]nless [D]efendant[] admitted [an] alleged fact in [his A]nswer, the Court [does] not consider[ the] unverified statements in [Plaintiff's C]omplaint. [Such] allegations are not under oath and are not evidence." Id. (internal parenthetical citations omitted) (citing Higgins v. Scherr, 837 F.2d 155, 156-57 (4th Cir. 1988)).

### I. Official Capacity Claim

With respect to local government officials, official capacity liability attaches under Section 1983 only if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121 (1992) (internal quotation marks omitted). Notably, an official's discretionary acts, exercised in carrying out official duties, do not necessarily represent official policy. Gantt v. Whitaker, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002). "Rather, the official must have 'final authority' over government policy with respect to the action in question" to trigger official capacity liability. Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 481-82 (1986)).

Here, Plaintiff alleges injury from Defendant's actions and further alleges that "[Defendant] acted [ ] pursuant to the custom of Forsyth County [D]etention [C]enter because he has final authority." (Docket Entry 2 at 4.) However, Plaintiff neither has

5

identified a written policy nor offered factual assertions regarding "the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (internal quotation marks omitted). Again, the Complaint sets out limited factual matter, coupled with conclusory allegations. Further, both the Plaintiff's "Answer to a Counterclaim" and his summary judgment response repeat the conclusory allegations and fail to provide any evidence. (See Docket Entry 12 at 1-5; Docket Entry 17 at 1-4.)

In his affidavit, Defendant avers that, "[he is] not, nor [has he] ever been, the final policy making authority or policy maker for the Forsyth County Sheriff's Office. That authority, alone, rests with the duly elected Sheriff of Forsyth County." (Docket Entry 15-3, ¶ 5.) Along with his summary judgment motion, Defendant submitted an affidavit from Sheriff Schatzman (the "Schatzman Affidavit"), "the duly elected Sheriff of Forsyth County" (Docket Entry 15-4, ¶ 2). The Schatzman Affidavit states that, "as the duly elected Sheriff of Forsyth County, [he] had final policy making authority for the Forsyth County Sheriff's Office, including the Forsyth County Detention Center. [He] did not delegate[] this policy making authority to anyone else, ever. Therefore, as the Sheriff of Forsyth County, [he] was the sole

6

policymaker for the Forsyth County Sheriff's Office at all times." (Id., ¶ 3.)

The in forma pauperis statute provides that "the [C]ourt shall dismiss the case at any time if the [C]ourt determines . . . the action . . . fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff has not stated a claim against Defendant in his official capacity, and the Court will thus dismiss that aspect of Plaintiff's claim.

## II. Administrative Segregation and Use of Restraints

The Complaint's central allegations consist of the following: on three different occasions, Plaintiff was "given permission to use the law library in the multipurpose room to read [and] write in full restraints," and he "has [was] placed in admin[istrative] segregation without due process." (Docket Entry 2 at 4.) In both his "Answer to a Counterclaim" and his summary judgment response, Plaintiff repeats those conclusory allegations, but offers no evidence to support them. (See Docket Entry 12 at 1-5; Docket Entry 17 at 1-7.)

As previously discussed, the Complaint also asserts that "[Defendant] approved this situation because he has final authority" (Docket Entry 2 at 5), and relies on that assertion in seeking to impose liability against Defendant (see id. at 4-6). "To establish personal liability under [Section] 1983, [P]laintiff must affirmatively show that [Defendant] acted personally in the

7

deprivation of [P]laintiff's rights. That is, [Defendant's] own individual actions must have violated the Constitution. Importantly, mere knowledge of such a deprivation does not suffice." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal brackets, citations, and quotation marks omitted).

In his affidavit, Defendant avers the following:

> Several Special Administrative Measures orders (SAM) regarding [Plaintiff were ] entered . . . to the effect that he would be placed in full restraints anytime he is moved outside his cell within or [outside] of the Detention Center, out of officer safety concerns based upon the very serious nature of the pending crimes charged, threats to another inmate, concerns for officer safety after the discovery of shanks inside [Plaintiff's] cell.
>
> . . . .
>
> These special administrative orders all are well within the scope and nature of my job duties, following Sheriff's Office policies, directives and orders at all relevant times to provide for inmate safety, officer safety, security, order and discipline within the detention facility.

(Docket Entry 15-3, ¶¶ 7, 10.)

Along with his Summary Judgment Motion, Defendant also submitted an affidavit from Sergeant Whitt (the "Whitt Affidavit"), a Forsyth County Detention Center officer "hold[ing] the rank of Sergeant" (Docket Entry 15-1, ¶ 2). The Whitt Affidavit states that, "[he] personally drafted each SAM document . . . for review and implementation by [his] supervision," (id., ¶ 17), which included Defendant (see id., ¶¶ 7, 9). Sergeant Whitt further

8

avers that "Defendant [] did not have any personal substantive input into any of Plaintiff[ ]'s restrictions. (Id., ¶ 19.)

Consequently, although Defendant, through submitted evidence, contends that he did not "personally draft" (id., ¶ 17), or "have any personal substantive input" (id., ¶ 19), as to Plaintiff's restrictions, he does confirm that he entered and modified the SAM orders establishing Plaintiff's placement in administrative segregation and restraints (id., ¶¶ 7, 9), and that they were "well within the nature and scope of his job duties" (Docket Entry 15-3, ¶ 10). As such, although Plaintiff failed to provide evidence to support his allegations, Defendant has admitted his personal involvement in Plaintiff's placement in administrative segregation and related restraint protocol.

Turning to Plaintiff's specific argument regarding his allegations, the Supreme Court has observed that a pretrial detainee can "prevail [on an excessive force claim] by showing that the [defendant's] actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" Kingsley v. Hendrickson, U.S. , , 135 S. Ct. 2466, 2473 (2015) (quoting Bell v. Wolfish, 441 U.S. 520, 561 (1979)). Ultimately, a standard of objective reasonableness applies to a pretrial detainee's excessive force claim. Id., U.S. at , 135 S. Ct. at 2472-73. Nonetheless, "the detention center may impose

9

restraints on the detainee that are reasonably related to the detention center's interest in maintaining the facility's security, even if the restraints 'are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial.'" Cash v. Thomas, Civ. No. 6:12-1278, 2013 WL 3804375, at *7 (D.S.C. July 19, 2013) (unpublished) (quoting Bell, 441 U.S. at 539–40).

In this regard, Plaintiff contends that "his placement in segregation with related loss of privileges and [being placed] in restraints while he conducted legal research w[as] not rationally related to a legitimate nonpunitive governmental purpose" (Docket Entry 17 at 3 (parenthesis and quotations in original omitted)). By contrast, the Defendant's Affidavit states the following:

> Based upon [P]laintiff's pending double murder charges, his threat to kill another inmate together with finding handmade weapons or 'shanks' in his cell, in the exercise of my discretion in carrying out my official duties[,] I approved of him being placed in administrative segregation away from general population to maintain the safety, security and order of the jail.

(Docket Entry 15-3, ¶ 12.)

Additionally, the Whitt Affidavit provides a detailed explanation of these actions. To begin, shortly after Plaintiff was incarcerated at Forsyth County Detention Center, he "was assigned to general population." (Docket Entry 15-1, ¶ 4.) However, after a law enforcement officer reported to Sergeant Whitt regarding Plaintiff's "plan to take a gun from a courtroom bailiff,

10

shoot witnesses and hold the court hostage when he was transported to the [c]ourthouse on his charges" (id., ¶ 6), Sergeant Whitt "promptly reported [Plaintiff's] plan to [his] supervision," which included Defendant (id., ¶ 7). Defendant and another supervisor "thereafter promptly entered a [SAM order] regarding [Plaintiff] to the effect that he would be place[d] in full restraints any[]time [that] he [was] moved within or [outside of] the Detention Center, out of concern for officer [] and inmate safety." (Id.) Shortly thereafter, Plaintiff's cellmate "report[ed] that while he was housed with [Plaintiff], he awoke at night to find [Plaintiff] standing over him [and w]hen asked what he was doing, [Plaintiff] replied [that he was] thinking about whether or not [he was] going to kill [the cellmate]." (Id., ¶ 8.) Sergeant Whitt then "briefed [Defendant] who modified the [SAM] order [to include] that [Plaintiff] would be housed by himself" in addition to previous restrictions. (Id., ¶ 9.)

At a later date, Plaintiff "was charged with two counts of [f]irst [d]egree [m]urder" (id., ¶ 10), and, as a result, Plaintiff "was housed such that he was not in contact with other inmates . . . . [and] his only contact was with detention center personnel" (id., ¶ 11). Additionally, "during a routine cell search, by Detention Officer Bartlett, [Plaintiff] was found to be in possession of two shanks, makeshift weapons, fashioned from tooth brushes. He was then charged with two infractions and placed in

11

disciplinary segregation for 35 days for officer safety concerns." (Id., ¶ 12; see also Docket Entry 15-2 (Affidavit of Officer Bartlett), ¶¶ 8-9 (averring that "[Plaintiff] was the only inmate assigned to th[at] particular cell and had been the sole occupant for several months" and that "[n]o other inmate had access to [Plaintiff]'s cell before or after [Officer Bartlett] found the two makeshift weapons").)  In light of these violations, Plaintiff's "SAM was modified such that he was to be handcuffed behind his back prior to officers entering his cell to apply full restraints before moving him about the Detention Center . . . ." (Docket Entry 15-1, ¶ 14.)  Finally, Plaintiff's "SAM was modified again . . . to accommodate [Plaintiff] being able to use the mobile law library after 2400 hours for a period not to exceed one hour.  This SAM provided [Plaintiff] was to be in full restraints at all times and be chained to the wall via an 'eye hook' . . . and to be closely monitored . . . via closed circuit camera."  (Id., ¶ 15.)

In sum, based upon uncontested evidence, Plaintiff was placed in administrative segregation and restraints, including while conducting research in the law library, "out of officer safety concerns based upon the very serious nature of the pending crimes charged, threats to another inmate, [and] concerns for officer safety after the discovery of shanks inside the inmate's cell" (Docket Entry 15-1, ¶ 7).  "[I]t is well settled that the placement of inmates into administrative segregation units is a valid means

12

of minimizing a threat to security of the institution, threat to the safety of other residents or Jail staff, etc." Anderson v. McCombs, Civil No. 0:09-3340, 2010 WL 2772703, at *3 (D.S.C. Mar. 9, 2010) (unpublished), recommendation adopted, 2010 WL 2772839 (D.S.C. July 13, 2010) (unpublished). As such, these restrictions are "reasonably related to a legitimate nonpunitive governmental objective." Martin, 849 F.2d at 870. To the extent the Complaint or Plaintiff's summary judgment response contain (unverified) factual allegations suggesting otherwise, those allegations do not constitute evidence. See Maisha, 2015 WL 277747, at *1.

Accordingly, the Court grants summary judgment to Defendant on Plaintiff's claims regarding his placement in administrative segregation and the use of restraints.

### III. Loss of Telephone Privileges

Additionally, in his "Answer to a Counterclaim" (Docket Entry 12), Plaintiff further alleges that he is "not allowed access to the phone when out of his cell like the policy handbook suggest[s]" (id. at 2). In his response to the summary judgment motion (Docket Entry 17), Plaintiff merely repeats (in unsworn fashion) that conclusory allegation (see id. at 2).

Defendant's affidavit does not address this claim (see Docket Entry 15-3 at 1-5) likely as a result of Plaintiff's failure to assert this allegation in his Complaint (see Docket Entry 2 at 1-14). However, the Whitt Affidavit states that, "[s]ince

13

[Plaintiff] is not housed in general population, the privileges attendant to that housing status, such as frequent phone access . . . do not apply. In that regard, [Plaintiff's] grievances on th[at] matter[] do not apply to him." (Docket Entry 15-1, ¶ 20.) The uncontested evidence thus shows that Plaintiff's loss of telephone privileges resulted from his placement in administrative segregation. (See id.) Moreover, courts have held that this type of claim does not amount to a constitutional deprivation. See United States v. Alkire, No. 95-7885, 82 F.3d 411 (table), 1996 WL 166400 (4th Cir. Apr. 10, 1996) (unpublished).

In sum, the record warrants summary judgment for Defendant on this claim.

## CONCLUSION

Defendant has established entitlement to judgment as a matter of law on Plaintiff's official and individual capacity claims.

**IT IS THEREFORE ORDERED** that Defendant's Summary Judgment Motion (Docket Entry 14) is **GRANTED** and that judgment will be entered in his favor.

/s/ L. Patrick Auld<br>
**L. Patrick Auld**<br>
**United States Magistrate Judge**

March 31, 2020